UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>      Plaintiff,<br>  vs.<br>ANTHONY JOHNSON,<br>      Defendant. | CR-04-201-JLQ<br><br>MEMORANDUM OPINION AND ORDER DENYING MOTION FOR NEW TRIAL |

BEFORE THE COURT is Defendant's Motion for New Trial (Ct. Rec. 120). Defendant is represented by attorney **Robert Caruso**. The Government is represented by Assistant United States Attorney **Russell Smoot**.

## DISCUSSION

On April 12, 2005, Defendant was found guilty, after a five-day jury trial, of Counts Two and Three of the Superseding Indictment of knowingly and intentionally distributing 5 grams or more of a mixture containing cocaine base and Count Four of knowingly and intentionally possessing with intent to distribute 5 grams or more of a mixture containing cocaine base, all in violation of 21 U.S.C. § 841(a)(1).

In his Motion for New Trial, Defendant raises essentially two claims of error: 1) that this court erred in not allowing an audiologist to testify that portions of the recordings secured by the Drug Enforcement Agents during the August 25, 2004 drug transaction were inaudible; and 2) that the court erred in not allowing broader cross examination of the confidential source Jerome Farris, on the issue of his alleged failure to file federal tax returns.

ORDER - 1

Under Fed. R. Crim. P. 33, this court may vacate a judgment and grant a new trial "if the interest of justice so requires". This determination is within the sound discretion of the trial court. *United States v. Alston*, 974 F.2d 1206, 1212 (9th Cir. 1992).

**I. Audiologist**

The audio recordings at issue pertain to three drug transaction investigations conducted by the Drug Enforcement Agency on August 19, August 25, and October 20, 2004. Defendant disputed the Government transcripts of the audio recordings and had his own alternate transcript prepared of some of the recordings. When the August 19, 2004 recording of a telephone conversation (trial Ex. 1) was played for the jury, it was played twice - - once with the Government transcript being given to the jury, and once with the Defendant's transcript being given to the jury. When trial Ex. 10, a recording of the August 19, 2004 drug sale, was played no transcripts were furnished to the jury.

Defendant objects in the motion for new trial to the playing of a recording of the August 25th drug sale, at which only the Government's transcript was used, and to this court's later preclusion of the proffered audiologist testimony. This court allowed only the Government's transcript to be used because Defendant <u>had not prepared an alternate version</u>, presumably because he did not object to the Government's transcript. During the offer of proof, Defendant claimed an alternate transcript was not prepared because the recording was largely inaudible, and offered that the audiologist would testify as to what the jury could or could not hear on the recording.

The general rule is that to be admitted in evidence, a tape recording of a conversation must be audible and sufficiently comprehensible for a jury to consider its content. 29A *Am.Jur.*2d Evidence § 1238. The fact that some portions of a tape recording are inaudible or unintelligible does not invariably render the entire tape inadmissible. *Id.* The tape is admissible so long as the unintelligible portions are not so substantial as to render the tape as a whole untrustworthy. *Id.* The admissibility is a discretionary decision for this court.

It is well established that a district court may allow the jury to utilize a transcript as

a listening aid. See *United States v. Booker*, 952 F.2d 247 (9th Cir. 1991). In *Booker* the Ninth Circuit stated that it is appropriate to give a jury a transcript when: 1) the trial judge reviews the transcript for accuracy; 2) the agent who participated in the taped conversation testifies as to the accuracy; and 3) the judge gives a limiting instruction. Interestingly, in *Booker* the district court did not review the transcript for accuracy before its playing, but the other two factors were met and the Ninth Circuit found no abuse of discretion in allowing the use of the transcripts.

The case *sub judice* is quite similar. Although this court did not review the transcripts for accuracy prior to the playing, both the agents involved with the recording and the confidential source testified as to the accuracy. Additionally, the court gave an oral limiting instruction at the time the tape was played and in writing just prior to deliberations.(Ct. Rec. 114 - Jury instruction 20A)   The jury was instructed that the recordings themselves were the evidence and not the transcripts. The jury was not given the transcripts to review during deliberations. There was no error. See also *United States v. Sass*, 111 F.3d 139 (9th Cir. 1997)(unpublished)("Nor can we conclude that the district judge abused his discretion in allowing the jury to look at the transcripts and listen to those tapes which were inaudible."); *United States v. Cruz*, 172 F.3d 59 (9th Cir. 1999)(unpublished)(finding no error in the allowing of transcripts or the playing of tapes that were "inaudible in part" the court stated: "The judge gave a proper admonition to the jury that the tape recordings, not the transcripts, were the evidence they had to consider in their deliberations and the agent who participated in the conversations and the preparation of the transcript also testified as to their accuracy.").

Defendant argues that an audiologist should have been allowed to testify as to what the jury could hear on the August 25, 2004 tape. Federal Rule of Evidence 702 allows an expert witness to give an opinion if "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence". The determination of whether such testimony will assist the trier of fact is left to the discretion of this court. *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000). Whether the proffered testimony

ORDER - 3

would be helpful to the jury within the meaning of Rule 702 is essentially a relevance inquiry, and the district court exercises a 'gate keeping' function in determining reliability and relevance. *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1184 (9th Cir. 2002). In making a determination of the relevance and reliability of expert testimony this court is given "broad discretion". *United States v. Murillo*, 255 F.3d 1169, 1178 (9th Cir. 2001). Allowing an audiologist to tell the jury what they could or could not hear on the tape played in open court, would improperly invade the province of the jury. Additionally, this court instructed the jury that; "If you hear something different than what was on a transcript, or were unable to hear or understand anything on a recording that was on a transcript, you should disregard what was contained in the transcript." (Court's written jury instruction 20A). There was no error in the preclusion of the audiologist's proffered testimony.

## II. Cross-Examination of the Confidential Source

This court allowed cross-examination as to prior felony convictions of the confidential source ("CS"), of which there were many, and allowed questions on cross regarding both prior arrests and misdemeanor convictions for crimes of dishonesty. Defendant contends that the court also should have allowed questions as to the CS's alleged failure to pay federal income tax. Testimony was allowed on cross and direct that the CS was paid for his work with various governmental agencies and a DEA agent testified that the CS was paid in cash and that the DEA did not withhold taxes or report the income to the IRS. The court also instructed the jury to view the testimony of the CS with greater caution than other witnesses. (Ct. Rec. 114, Inst. 23).

Defendant contended at trial that between 1991 and 2004, the CS had made over $15,000 for his informant duties. The Government had also provided a report during discovery that showed the CS had been paid $8,400 for work done for the DEA between July, 2004 and March, 2005. Before making an inquiry into an alleged prior act of misconduct under FRE 608, the inquiring party "must establish to the satisfaction of the district court a good faith belief that the [witness] committed the misconduct at issue."

ORDER - 4

*United States v. Rushton*, 963 F.2d 272, 274 (9th Cir. 1992). Defendant failed to make such a showing. Rather, what Defendant presented to the court was that the CS had made $15,000 over a thirteen year period, and that he had made $8,400 over the last two years. This is not sufficient to establish that the CS earned the amount necessary to be required to file federal taxes. For example, in the year 2000, an individual was not required to file a federal income tax return unless gross income exceeded $7,200.

More importantly, the jury had sufficient information to evaluate the potential bias and motives of the CS. See *United States v. Jackson*, 882 F.2d 1444 (9th Cir. 1989). The crucial issue is whether the jury had sufficient evidence from which to evaluate a witness' testimony. Defense counsel was allowed to inquire as to numerous felony convictions, including burglary, grand larceny, and forgery. Additionally Defense counsel was allowed to inquire as to arrests for crimes of dishonesty. Defense counsel and the Government on direct, elicited testimony as to the amount the CS was paid for his informant services. "The trial court need not over-emphasize the untrustworthiness of a witness by permitting cumulative impeachment." *Jackson* at 1447. The jury had sufficient information from which to judge the credibility of the witness. See also *United States v. Ray Houston*, 963 F.2d 380 (9th Cir. 1992)(unpublished)("Cross-examination of [witness] revealed that he earned $300 as an informant in this case and more than $30,000 as an informant in other cases. The jury was provided sufficient information to assess any potential bias or self-interest.").

This almost exact issue was recently addressed in *United States v. Holler* __ F.3d__ (9th Cir. June 13, 2005), where Defendant claimed the district court erred in not allowing him to use the CI's IRS records for impeachment purposes. The *Holler* court observed that: "A limitation on cross examination does not violate the Confrontation Clause unless it limits relevant testimony and prejudices the defendant, and denies the jury sufficient information to appraise the biases and motivations of the witness." *Id.* at __. In *Holler*, as in this case, the jury had sufficient information to appraise the biases and motivations of the witness. The *Holler* court concluded: "[Defendant's] claims fail

ORDER - 5

because the jury was presented with sufficient evidence to appraise the motivations of the CI, any error in the lack of the CI's IRS records was not prejudicial." *Id.* at __.  There was no error in disallowing the proffered questions regarding the confidential source's filing of income tax returns.

**IT IS HEREBY ORDERED:**

    1. Defendant's Motion for New Trial (Ct. Rec. 120) is **DENIED**.

**IT IS SO ORDERED**.  The Clerk is hereby directed to enter this Order and furnish copies to counsel.

    DATED this 14th day of July, 2005.

<u>s/ Justin L. Quackenbush</u>
JUSTIN L. QUACKENBUSH
Senior United States District Judge